UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MOSAIC SUSTAINABLE FINANCE CORPORATION, et al.,[1] | ) ) | Case No. 25-90156 (CML) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### QUIET TITLE LANDOWNERS' OBJECTION TO CONFIRMATION OF THE SECOND AMENDED PLAN OF RE-ORGANIZATION (ECF No. 473)

The Quiet Title Landowners ("QT Landowners" – namely, the Federal Home Loan Mortgage Corporation ("Freddie Mac"), HOF REO 1, Inc. ("HOF"), American Financial Network, Inc., and MVP 1 REO, LLC ("Shellpoint")), respectfully object to confirmation of the Second Amended Plan of Re-Organization ("Plan") (ECF No. 473), and specifically object to the over-broad and excessive, weaponized Releases, Third-Party Releases, and Injunction contained in **Section XII** of the proposed Plan. They also formally object to, and oppose, the over-broad, weaponized, definition of "Causes of Action" in **Paragraph 1.20** of the proposed Plan.

This is a "Release Objection" under **Paragraph 1.133** of the proposed Plan and this Release Objection is timely. QT Landowers expressly deny and contest that they presently are, or ought to be regarded as, Creditors of the Estate, that they are in any way "Releasing Parties" for purposes of the Plan, or that they should be enjoined either from post-foreclosure Quiet Title Actions ("Quiet Title Actions") relating to the QT Landowners' own real estate, or from escalating with Other than

---

[1]The Debtors in these chapter 11 cases, including four digits of each Debtor's federal tax ID number, are: Mosaic Sustainable Finance Corp. (6802); Solar Mosaic LLC (3655); Modern Home LLC (4998); Mosaic Funding Holdings LLC (0866); and SMCTX LLC (6303). The service address for each of the above Debtors is 601 12th Street, Suite 325, Oakland, California 94607.

Quiet Title Counts ("OTQT Counts") for attorney fees, money damages, and other remedies, if necessary, in the post-bankruptcy period.

They all categorically Opt-Out of any and all Third-Party Releases. And they respectfully decline to subject themselves to pages and pages of impenetrable boilerplate, either by submitting any Ballot, by checking any box on any ballot form, or by submitting any Proof of Claim.

The Plan easily can be fixed, and made ready for confirmation, with a simple carve-out inserted into **Section XII**, and the Definitions, ensuring that the QT Landowners (and any similarly-situated REO title-clearance specialist entity) can and will – only if necessary – in the post-bankruptcy period, escalate in state court, if the Debtors or the Debtors' legal successors continue to refuse promptly and timely (see, e.g., Sections 9-344(c) and 9-513 of the UNIFORM COMMERCIAL CODE) to record UCC-3 Termination Statements, whenever the Debtors' solar equipment borrowers lose their real estate (and then abandon these borrowers'/Debtors'-debtors' physical possession of or claim to any solar equipment) following normal real estate foreclosure auctions.

So long as the Debtors (or their legal successors) promptly record the Termination Statements, they have literally nothing to fear from the QT Landowners. The QT Landowners have no intention to try to make money off of litigation seeking money damages, attorney fees, or the like, in post-foreclosure title clearance cases, rather than merely seeking judicial Quiet Title decrees.

Indeed, preferably, if Termination Statements get filed promptly, then there is no need for litigation at all. But the QT Landowners also need to be able to reserve the right to escalate with Other Than Quiet Title ("OTQT") claims for money damages, attorney fees, and other relief, if and to the extent that the Debtors don't cooperate on an on-going basis with efficient, timely, clearance of legal titles. See, e.g., Original Petition, at ¶ 3 (April 23, 2025) (reserving the right to amend, and to add OTQT counts, but not pleading these causes of action initially), *in* HOF REO 1, Inc. v. Solar

Mosaic, LLC, Cause No. 2025-28563 (269th Jud. Dist. Ct., Harris Cty, Tx. *filed* Apr. 23, 2025) (**Exhibit A**)); Plaintiff's First Supplemental and Amended Petition (March 19, 2025) (amending to add counts seeking attorney fees and money damages due to Solar Mosaic recalcitrance), *in* Federal Home Loan Mortgage Corp. v. Solar Mosaic, LLC, Cause No. 153-360667-25 (153rd Jud. Dist. Ct., Tarrant Cnty. Tx, *filed* Jan. 2, 2025) (**Exhibit B**).

### THE QT LANDOWNERS NEVER LENT MONEY TO DEBTORS AND FILED NARROWLY-TARGETED LAWSUITS ABOUT TITLE TO THEIR OWN LAND

It is incongruous in the extreme to attempt to shoehorn any of the QT Landowners into the Releases and the Injunction, when the subject-matter and core objective of each Quiet Title Action is simply to clear legal title to the QT Landowner's **own** real estate, not to recover financial debts from the Estate. Said real estate is not part of the Estate and never has belonged to any Debtor.

It is even more incongruous to attempt to do so through the bizarre fiction of deeming each QT Landowner – even if that particular Landowner has never sought any attorney fees or money damages from any Debtor in relation to any Quiet Title Action – to be the holder of a $1.00 unsecured "claim" easily lost within a vast ocean of unsecured money "claims."

These entities are not here about pursuing a $1.00 unsecured "claim;" they are here to clear the way to list and sell real estate that does not belong, and never has belonged, to any of the Debtors, by making sure that each of the QT Landowners can obtain title insurance before listing non-Debtor, non-Estate real estate for sale.

We appreciate the concession by the Debtors (ECF No. 404) that, "Mosaic claims no interest in the real property." The trouble with this self-serving assertion by the Debtors is that title companies look at a "fixture filing" that is purposefully recorded (in contravention of Section 9-501 of the UNIFORM COMMERCIAL CODE) in the **real property records** of the county where real estate

is located, rather than in central, statewide, <u>personal property</u> filing offices, and see a claim for / interest in real property, and as a result, they understandably refuse to issue title insurance as a result of Debtors' purposeful and wrongful manufacture of a cloud on the QT Landowners' title.

The Debtors' actual behavior – and their refusal timely to file any Termination Statement in county real estate records – shows that their make-believe insistence that they "clai[m] no interest in real property" is a sham. And it is a deceptive sham that they have been – for months – actively seeking to exploit in an effort to extract money that never has been owed by any of the QT Landowners to any of the Debtors. <u>See also</u> 18 U.S.C. § 1961(1), (5) (defining "racketeering activity" and "pattern of racketeering activity"). This troll-under-the-bridge shakedown scheme, targeting the QT Landowners, needs to end and it needs to end permanently.

The QT Landowners respectfully decline – when they have no legal obligation to do so – to subsidize the Debtors' re-organization. The Debtors still have every right to sue the individuals who borrowed money from them. However, the situation has changed dramatically (note the vast difference between Section 9-344(c) and 9-344(d) of the UCC), now that the solar system borrowers no longer occupy the real estate and no longer have any interest of record in or to the real estate.

In **<u>reality</u>**, the QT Landowners merely want to carry out the mission that each was created to fulfill. Accompanying this Objection are multiple, recent, examples of UCC-3 Termination Statements, filed by swimming pool lenders, water filtration lenders, and other entities very similar to the Debtors. <u>See</u> **Exhibit C** (Aqua Finance, El Paso County – water filtration), **D** (Blue World Pools, Tarrant County – swimming pool), **E** (Connexus Credit Union, Medina County – swimming pool), and **F** (Castle Credit Co. Holdings, Atascosa County – "Home Improvement")). The main difference between these examples, and Mosaic, is that each of these lenders filed a UCC-1 "fixture filing" that actually and truthfully categorized their collateral <u>as a fixture</u>. And still, without being

paid a dime by any QT Landowner to do so, they each filed a Termination Statement and gave up any money demand, conditioning such a Termination Statement filing upon payment of all or part of their borrower's "secured" debt. In contrast, the Debtors (Mosaic) have clouded-up the real estate records for hundreds of thousands of homes, in hundreds (if not thousands) of counties across the United States, with bogus "fixture filings" that say on their face that the purported "collateral" isn't even a fixture. And, unlike many creditors with debt "secured" by <u>genuine</u> fixture filings, the Debtors continue to try to extract exorbitant money payments by conditioning post-foreclosure Termination Statements, upon the QT Landowners paying all or part of <u>someone else's</u> debt.

Additional examples are provided of default judgments – titles cleared without any of the QT Landowners paying a dime to the subordinate lenders – for Solis Quantum Loan Trust 2023-1 (Johnson County – solar electrical equipment) (**Exhibit G**), KMJK Legacy, LLC (Harris County – "Notice of Lien Claim") (**Exhibit H**), and Credit Human Federal Credit Union (Bexar County – solar energy equipment on which Solar Mosaic, LLC, previously was the lender) (**Exhibit I**).

Once the real estate is foreclosed, fore each and all of the UCC-1 Financing Statements clouding up the land titles, recorded by the Debtors, the real estate title issue ought to be resolved in the exact same way as the above examples, rather than being tied up in protracted litigation.

The mission of each of the QT Landowners is to promote liquidity, affordability and stability in the residential real estate market in the United States. <u>See</u> Affidavit of Jeremiah Hale, in Support of Motion for Partial Summary Judgment, at ¶¶ 2-3 (Mar 19, 2025), *in* <u>Federal Home Loan Mortgage Corp. v. Solar Mosaic, LLC</u>, Cause No. 153-360667-25 (153rd Jud. Dist. Ct., Tarrant Cnty. Tx, *filed* Jan. 2, 2025) (**Exhibit J**)). Residential real estate, acquired by homeowners who take out loans secured by mortgages or Deeds of Trust, sometimes goes into foreclosure. Foreclosures culminate in a public auction of the real estate. Sometimes, not always, "the Bank" or the holder of the

mortgage, winds up the owner of the real estate because nobody at the auction bids more than the net amount owed to "the Bank" by the borrower. This category of real estate is known as REO – "Real Estate Owned." Id., at ¶ 5. The objective and mission of the QT Landowners is not to hold onto REO single-family residential properties, but instead to get each such residence ready for listing and resale into the market for single-family residences as efficiently as possible.

None of the QT Landowners can occupy or live in single-family residential property, the way a family of natural persons can. They receive absolutely no benefit from the real estate if – for a protracted and indefinite time – they property is hijacked, and re-purposed (involuntarily for the Landowners – and without any compensation to the Landowners), by the Debtors, into nothing other than a geographically-distributed otherwise-vacant storage facility for what the Debtors (wrongly, we conclude) insist is still their "collateral." It isn't really their "collateral" anymore precisely because of the intervening mortgage foreclosures.

The "carrying costs" for such real estate – paying local property taxes, paying for landscaping and yard maintenance, paying for continuing repairs and other physical upkeep of the structures, delayed revenue because the listing and sale are delayed for months or even years – can be and are very substantial.

How many future parcels, with UCC-1 erroneous "fixture filings" recorded against them by the Debtors, are at risk of becoming post-foreclosure REO properties requiring the attention of the QT Landowners – on a continuing basis even after the Mosaic Bankruptcy is concluded? In January, 2025, at the same time we filed one of these lawsuits in Tarrant County (Fort Worth), then seeking Quiet Title only (and nothing else), a quick title search disclosed more than 8000 residences with Mosaic UCC-1 liens recorded against them as "fixture filings" in local real estate records. In California, Arizona, other populous counties in Texas, and a multitude of other states, Mosaic UCC-

1 Financing Statements clouding up the **Real Property Records** maintained by county governments, are equally ubiquitous. The likelihood that a large number of situations requiring clearance of legal titles, so foreclosed single-family residences can be returned to ownership of family home-buyers, will continue to arise frequently, post-bankruptcy, is exceedingly high.

At present, the QT Landowners are the plaintiffs in nine (9) lawsuits, each filed pre-petition against one or more of the Debtors, merely seeking judicial clearance of the legal record title to real estate that **does not belong to the debtors**, that is not part of the Estate, and that **never has belonged to the Debtors**. The reason for clearing the legal title is to make it possible for the QT Landowners to secure title insurance. Eight (8) additional parcels of real estate have been identified, subsequent to the filing of the Debtors' Petitions.

But the important thing to understand is that this list of over a dozen addresses is just the tip of the iceberg, and that efficient title-clearance will be needed – post-bankruptcy – for a presently-unknown but certainly larger number of single family residences to be foreclosed in the future. It is impossible at this time to know what the addresses of such future foreclosed properties will be, or to pre-litigate either the QT Counts or the OTQT Counts for such future-arising disputes about legal title to real estate.

## THE KNOWN REAL ESTATE REQUIRING TITLE CLEARANCE

While it is presently impossible to know in advance the full scope of the "iceberg" of residences to be foreclosed in the future, all requiring title clearance, the following existing real estate (owned by the QT Landonwrs, never by the Debtors), the "tip" of the iceberg, is known:

1. **Federal Home Loan Mortgage Corporation ("Freddie Mac").**

| Real Estate Address | Quiet Title Case Number / State Court | Mosaic Entity |
|---|---|---|
| 69 Sycamore Circle, Cabot, AR 72023 | Lawsuit not yet filed. (Lonoke County, AR). | Solar Mosaic, LLC |
| 22551 Canyon Lake Drive S, Canyon Lakes, CA 92587 | Federal Home Loan Mortgage Corp. v. Solar Mosaic, LLC, No. CVME2501087 (CA Super. Ct., Riverside Cnty., *filed* Jan. 27, 2025). | Solar Mosaic, LLC |
| 6989 Buffalo Road, Oak Hills, CA 92344 | Federal Home Loan Mortgage Corp. v. Solar Mosaic, LLC, No. CIVS2513065 (CA Super. Ct., San Bernadino Cnty., *filed* May 7, 2025). | Solar Mosaic, LLC |
| 10282 Farmington St., Oak Hills, CA 92344 | Lawsuit not yet filed. (San Bernardino County, CA). | Solar Mosaic, LLC |
| 1027 3rd Street, Rodeo, CA 94572 | Lawsuit not yet filed. (Contra Costa County). | Solar Mosaic, LLC |
| 3811 South Bollinger Street, Visalia, CA 93277 | Federal Home Loan Mortgage Corp. v. Solar Mosaic, Inc., No. VCU317409 (CA Super. Ct., Tulare Cnty., *filed* Jan. 27, 2025). | Solar Mosaic, Inc. |
| 1721 Fernwood Lane, Algonquin, IL 60102 | Federal Home Loan Mortgage Corp. v. Solar Mosaic, LLC, No. 2025-CH-000053 (16th Jud. Cir. Ct., Kane Cnty., IL, *filed* Apr. 30, 2025). | Solar Mosaic, LLC |
| 6338 Katie Lane, Klamath Falls, OR 97603 | Federal Home Loan Mortgage. Corp. v. Solar Mosaic, LLC, No. 25CV27683 (Klamath Cnty. Cir. Ct., Klamath Cnty., OR, *filed* May 7, 2025). | Solar Mosaic, LLC |
| 503 Bond Street, Copperas Cove, TX 76522 | Lawsuit not yet filed. (Coryell County, TX). | Solar Mosaic, LLC |
| 3308 NE 29th Street, Fort Worth, TX 76111 | Federal Home Loan Mortgage Corp. v. Solar Mosaic, LLC, No. 153-360667-25 (153rd Jud. Dist. Ct., Tarrant Cnty. Tx, *filed* Jan. 2, 2025) (Count One of Amended Complaint). | Solar Mosaic, LLC |
| 1810 Waterwood Drive Prosper, TX 75078 | Lawsuit not yet filed. (Collin County, TX). | Solar Mosaic, LLC |

| Real Estate Address | Quiet Title Case Number / State Court | Mosaic Entity |
|---|---|---|
| 920 Texas Madrone Drive Socorro, TX 79927 | Lawsuit not yet filed.  (El Paso County, TX). | Solar Mosaic, LLC |

### 2.     **HOF REO 1, Inc.**

| Real Estate Address | Quiet Title Case Number / State Court | Mosaic Entity |
|---|---|---|
| 2416 Truxillo Street, Houston, TX 77004 | HOF REO 1, Inc. v. Solar Mosaic, LLC, Cause No. 2025 28563 (269th Jud. Dist. Ct., Harris Cty, Tx. *filed* Apr. 23, 2025). | Solar Mosaic, LLC |

### 3.     **American Financial Network, Inc.**

| Real Estate Address | Quiet Title Case Number / State Court | Mosaic Entity |
|---|---|---|
| 6531 W Granada Road, Phoenix, AZ 85035 | American Fin. Network, Inc. v. Solar Mosaic, LLC, No. CV2025-012736 (AZ Super. Ct., Maricopa Cnty., *filed* Apr. 6, 2025). | Solar Mosaic, LLC |

### 4.     **MVP 1 REO, LLC (Shellpoint)**

| Real Estate Address | Quiet Title Case Number / State Court | Mosaic Entity |
|---|---|---|
| 10055 E Avenue R10, Littlerock, CA 93543 | MVP1 REO, LLC v. Solar Mosaic, LLC, No. 25STCV15000 (CA Super. Ct., Los Angeles Cnty., *filed* May 21, 2025). | Solar Mosaic, LLC |
| 4308 176th Place Country Club Hills, IL 60478 | Lawsuit not yet filed.  (Cook County, IL). | Solar Mosaic, LLC |

What is **really** going on here is that the QT Landowners have a repeated, frequent Quiet Title problem precisely **because** the Debtors / Mosaic chose not to record what they (now, conveniently) claim are UCC-1 Financing Statements "limited to . . . personal property" ... in the **Real Property** Records (not in the state central offices for UCC recordings, see Section 9-501 of the UCC), in the counties where each of these single-family residences are located.

There is a continuing and protracted Quiet Title problem precisely <u>because</u> the Debtors have for months refused (in stark contrast to Blue World Pools, Castle Credit Co. Holdings, Connexus Credit Union, or Aqua Finance Co.), timely to record UCC-3 Termination Statements, in order to clear the way for the QT Landowners to secure "clean" title insurance.

## **THE PROBLEM**

Why are nearly two dozen "fixture filings" by the Debtors in the **real property** records a serious and continuing problem? A couple of illustrations may be helpful. First, we invite the Court to consider the Complaint filed by the Federal Trade Commission in Wisconsin, last year, against a company called Aqua Finance, Inc. <u>See</u> Complaint, at ¶¶ 3, 8, 9 (May 1, 2024), *in* <u>Federal Trade Commission v. Aqua Finance, Inc.</u>, No. 3:24-cv-00288-jdp (W.D. Wi. *filed* May 1, 2024, *consent judgment entered* July 8, 2024). This illustration should help the Court infer the adverse impact of the Debtors' / Mosaic's business practices on ordinary consumers, even prior to post-mortgage-foreclosure situations in which the QT Landowners need to get involved. <u>See</u> <u>id.</u>, at ¶ 3 ("A[qua] also fails to disclose, or adequately disclose, that the terms of its financing contain a provision that AFI relies on to file a UCC fixture filing on the water treatment system being financed. This filing impedes many consumers' ability to sell or refinance their homes unless consumers fully pay AFI's deceptively marketed financing. AFI also knowingly reports inaccurate information about consumers' water treatment financing to consumer reporting agencies ("CRAs") in violation of the FCRA. Additionally, in numerous instances, the consumers harmed by the practices alleged in this paragraph, have been Latino or older adults.").

Second, the Court is respectfully invited to consider the way in which the installation of a water treatment system (the subject of what was deemed a "fixture filing") in Houston – prior to foreclosure of a single family residence – wound up tying that real estate up for seven (7) years of

lawsuits and appeals.  See Carmel Fin. Corp. v. Castro, 514 S.W.3d 291, 294-97 (Tex. App. -- Houston [14th Dist.] 2016, pet. denied).  In Carmel v. Castro, the real estate remained under a cloud of threatened or actual litigation the whole time from foreclosure in September 2010 through September 22, 2017, when the Texas Supreme Court finally denied the writ of error.

In the Castro case, a non-mortgage lender (Carmel Financial Corporation ("Carmel")), financed the installation of a $5990.00 water filtration system, within a single-family residence, in April 2008.  Castro, 514 S.W.2d at 293.  The contract between the borrower and Carmel, included an Article 9 (UCC) Security Agreement, and Carmel recorded a "fixture filing" under Article 9 in the Official Records of Harris County.  Id.

The original homeowner / borrower in Castro also had a mortgage on the real estate  Id. at 293. "The [original] homeowner subsequently defaulted on payment for the water treatment system. He also defaulted on his mortgage.  Bank of America foreclosed in September 2010 and transferred its rights in the property to HUD in May 2013."  Id.

Note how long the real estate (confusingly-encumbered by Carmel using a UCC Article 9 "fixture filing") in the Castro matter, remained unsold or off the market - almost four years.  Plus, after the new buyer acquired the real estate from HUD in January 2014, the property still remained tied-up in litigation (due to no fault of the new arms-length buyer) all the way through December 29, 2016 (not even including Carmel's writ petition to the Texas Supreme Court).  So many years of uncertainty is not good for municipalities, for Freddie Mac, for other QT Landowners, or for good-faith homebuyers.  The Castro opinion continues:

> HUD notified Carmel in September 2013 that it would not pay the full amount owed to Carmel for the water treatment system; instead, HUD offered $1,000.  Carmel declined the offer.  HUD then

removed the water treatment system from the house. Carmel refused to accept delivery when HUD attempted to return the system. HUD sold the house to Dickson in January 2014; at that time, the water treatment system no longer was attached to the house.

Carmel sued HUD in December 2013, seeking judicial foreclosure and a declaratory judgment; Carmel added Dickson as a defendant in 2014, after she bought the house from HUD. Carmel alleged that its fixture filing lien attached to the real property and so allowed Carmel to judicially foreclose on the real property to obtain payment for the water treatment system. Carmel asserted that Dickson took possession of the property subject to Carmel's lien. Carmel also maintained that HUD's removal of the water treatment system did not eliminate the lien because Carmel's lien already had attached by the time HUD removed the system.

The parties filed cross-motions for traditional summary judgment. Id., at 293. The Harris County trial court decided all issues in favor of Dickson and HUD. Id., at 293-94. The Court of Appeals also affirmed. Carmel Fin. Corp. v. Castro, 514 S.W.3d 291, 295-97 (Tex. App. – Houston [14th Dist.] 2016, pet. denied).

Unlike the Castro case, the solar systems that are the subject of the Debtors' UCC Financing Statement filings in the **real property** records of multiple counties in multiple states, remain physically attached to the structures and real estate. We respectfully ask the Court, what title insurance company worth its salt, is going to issue "clean" title insurance to facilitate a sale of a residence to a new homeowner like Dickson, while the legal title remains clouded up with the

Debtors' so-called "fixture filings?"

In the Quiet Title lawsuit filed by Freddie Mac against Solar Mosaic, LLC in Fort Worth – even though Freddie Mac has analyzed the issue and concluded that Solar Mosaic LLC has **no** post-foreclosure right or entitlement either to "repossess" its purported "collateral" – in the interest of getting title cleared quickly, we promptly proposed in early February, 2025, a twenty (20) - day window for Solar Mosaic, LLC, to "repossess" its purported "collateral," and to restore the real estate to its pre-installation condition. Subsequently, our Amended Complaint in that lawsuit, expressly set a deadline for Solar Mosaic to exercise what it claimed were its "repossession" rights. See **Exhibit B** (Plaintiff's First Supplemental and Amended and Petition (March 19, 2025), *in* Federal Home Loan Mortgage Corp. v. Solar Mosaic, LLC, Cause No. 153-360667-25 (153rd Jud. Dist. Ct., Tarrant Cnty. Tx, *filed* Jan. 2, 2025)); **Exhibit K** (Motion for Partial Summary Judgment (Count One – Quiet title only) (March 22, 2025), *in* Federal Home Loan Mortgage Corp. v. Solar Mosaic, LLC, Cause No. 153-360667-25 (153rd Jud. Dist. Ct., Tarrant Cnty. Tx, *filed* Jan. 2, 2025)); and **Exhibit J** (Affidavit of Jeremiah Hale, in Support of Motion for Partial Summary Judgment(Mar19, 2025), *in* Federal Home Loan Mortgage Corp. v. Solar Mosaic, LLC, Cause No. 153-360667-25 (153rd Jud. Dist. Ct., Tarrant Cnty. Tx, *filed* Jan. 2, 2025)).

The Debtors have not done any such thing and remain unwilling to do so on any timetable whatsoever. They are not paying the QT Landowners, at customary commercial warehouse storage rates for indefinite-term storage of what they deem their "collateral." They have not lifted a finger to arrange alternate storage.

The above exhibits, as well as **Exhibit A** (Original Petition (April 23, 2025), *in* HOF REO 1, Inc. v. Solar Mosaic, LLC, Cause No. 2025-28563 (269th Jud. Dist. Ct., Harris Cty, Tx. *filed* Apr. 23, 2025)), make clear what some of the "Other than Quiet Title" causes of action are, that the QT

Landowners need to remain free to use for escalation purposes, in the post-bankruptcy period, in relation to new post-bankruptcy foreclosures of additional single family residences.

The QT Landowners simply want to be able, and free, to escalate (only if Debtors act in a way that makes it necessary to do so) in response to any resumption by the Debtors or the Debtors' legal successors, of the unlawful and inequitable troll-under-the-bridge shakedown scheme that the Debtors already have exhibited an already-known track record of attempting to inflict on business entities like the QT Landonwers. Again, the QT Landowners have never have borrowed money for these solar systems from the Debtors, and the Debtors have absolutely no legal right to collect or demand payment of any money whatsoever, from the QT Landowners. We categorically object to any situation in which the Releases or the Injunction contemplated by the Plan are weaponized as a sword for the Debtors, rather than a shield – enabling them to shake down the QT Landowners by demanding payments of money that the QT Landowners never have owed them. And then preventing the QT Landowners from seeking or securing proportional, equitable, and wholly appropriate redress for the harms that the Debtors have a track-record of seeking to inflict on others.

The relief that the QTLandowners seek is (1) to remove the designation of the QT Landowners as "Unsecured Creditors" of the Estate (the QT Landowners are willing to waive their legal entitlement to taxable costs in the Quiet Title Counts, if needed; and (2) expressly to carve-out from the Releases, Third-Party Releases, and the Injunction all lawsuits, asserted by post-foreclosure landowners (including the QT Landowners), possessing real estate on which solar energy equipment happened to be installed, pre-foreclosure, seeking to Quiet Title to real estate in which the Debtors do not now and never previously have held legal title.

The Releases, Third-Party Releases, and Injunction, as proposed, are grossly inequitable, if they are applied in any way to any of the QT Landowners. What the Debtors have shown –through

their behavior in and prior to bankruptcy – signals their intention, post-bankruptcy, unlawfully to subsidize their re-organization through a scheme and Pattern of systematically unreasonable, inequitable, and unjust substitutionary collection of defaulted "debt" that the QT Landowners never have owed any of the Debtors.

The QT Landowners do not owe the Debtors money and never borrowed money from them for any of these solar systems. Never have they guaranteed any debts of the Debtors' borrowers.

Nonetheless, the Debtors want to leave the path open to get paid, post-bankruptcy – in an amount that the Debtors want to have the power to set unilaterally – as a pre-condition for recording UCC-3 Termination Statements, terminating UCC-1 Financing Statements that the Debtors have wrongfully filed as "fixture filings" in the Real Property Records of counties throughout the United States. The QT Landowners are differently-situated than the Creditors (even the unsecured Creditors) of the Estate. And the Plan ought to be written in such a way that it expressly acknowledges the vast differences between the specific situation of the QT Landowners, and any random unsecured Creditor of the Estate.

Handling these issues any other way – in other words, allowing the Debtors and heir (evidently, too clever by half) legal counsel to weaponize the Injunction and the Releases, as a sword to inflict harm on the QT Landowners, rather than as any legitimate form of shield, runs the risk of converting the Bankruptcy Court itself (inadvertently, perhaps, but the harm is the same), into a cats-paw and instrument of a violation by Debtors of the Takings Clause of the Fifth Amendment.

The physical intrusion onto the QT Landowners' land (converting it into uncompensated outdoor warehouse storage for solar equipment, while preventing the QT Landowners from listing and selling the real estate) is much more extreme and intrusive than what was recognized to be a *per se* taking in Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S. Ct. 3164 (1982).

In Loretto, the Supreme Court recognized that a "a permanent physical occupation of real property" works a *per se* Taking, and that "constitutional protection for the rights of private property cannot be made to depend on the size of the area permanently occupied." Id., at 436 & n.13.

Do the solar energy systems that Solar Mosaic does not repossess (even when invited to do so – see **Exhibits B, J**, **K**), literally physically occupy a large portion of the real estate in question? Yes. And this continuing, potentially permanent, physical occupation, along with Solar Mosaic's protracted refusal to record any UCC-3 Termination Statement, is precisely what Solar Mosaic purposefully utilizes to enable its "troll under the bridge" business model – attempting, unlawfully, to coerce the QT Landowners to pay money to Solar Mosaic, that none of the QT Landowners ever borrowed from Solar Mosaic, and that none of them have any legal obligation to pay.

Subsequent decisions have made clear that physical occupations or invasions of one or more landowners' parcels of real estate – even if only **indefinite in duration**, rather than necessarily permanent – still can and will constitute a *per se* Taking of private property for a non-public purpose (or a taking for a public purpose without just compensation). See, e.g., Arkansas Game & Fish Comm'n v. United States, 568 U.S. 23, 133 S. Ct. 511 (2012); First English Evangelical Lutheran Church v Los Angeles County, 482 US 304, 96 L Ed 2d 250 (1987); Nollan v. California Coastal Comm'n, 483 U.S. 825, 107 S. Ct. 3141 (1987).

And the law also makes clear that when private actors like the Debtors, hijack the levers of government to carry out ends that violate the Fifth and Fourteenth Amendments, they can be held accountable for it. E.g., Wyatt v. Cole, 504 U.S. 158, 112 S. Ct. 1827 (1992); Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S. Ct. 2744 (1982).

What the Debtors really are insisting on doing is engaging in a government- enabled (and we hope not a bankruptcy-court-assisted) **taking** of the land of the QT landowners. Including

depriving the QT Landowners (and all downstream *bona fide* purchasers for value of these single-family residences), of all beneficial use of the real estate *as* single-family residences, for so long as the unlawful taking is prolonged.

The taking involves either an indefinite-duration physical occupation or a permanent physical occupation of the real estate. So long as the Debtors' unlawful Taking scheme continues, the QT Landowers are literally deprived of all beneficial economic use of the QT Landowners' real estate. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015-16, 112 S. Ct. 2886 (1992) (citing Agins v. Tiburon, 447 U.S. 255, 260; 100 S. Ct. 2138 (1980); Nollan v. California Coastal Comm'n, 483 U.S. 825, 834; 107 S. Ct. 3141 (1987); Keystone Bituminous Coal Assn. v. DeBenedictis, 480 U.S. 470, 495, 107 S. Ct. 1232 (1987); Hodel v. Virginia Surface Mining & Reclamation Assn., Inc., 452 U.S. 264, 295-296, 101 S. Ct. 2352 (1981)).

Accordingly, one particularly important objective of this filing is to help ensure that this honorable Court does not unwittingly get enlisted by the Debtors (through strategic omission, active misinformation, and, it appears, no small amount of skulduggery) to become the Debtors' governmental cats-paw and enabler, to carry out an unlawful Taking (harming each and all of the QT Landowners), in violation of the Fifth Amendment of the U.S. CONSTITUTION, the Fourteenth Amendment (Due Process Clause), especially when no public benefit is served by Debtors' already-ongoing government-enabled Taking.

Please note, however, that the Debtors have not been sued (in any court case, whatsoever) under 42 U.S.C. § 1983, Bivens, Wyatt v. Cole, or other law, for their unlawful taking scheme. Nor have they been sued by the QT Landowners for civil RICO violations – which the facts relating to their pattern of problematic filings in county real property records, likely also would support.

The QT Landowners are merely seeking, quickly and efficiently, either (1) to get UCC-3

Termination Statements recorded for each of the properties burdened by the Debtors' deeply-problematic UCC-1 definitely-not-a-fixture "fixture filings;" or (2) to secure judicial Quiet Title decrees, clearing these unlawful clouds off of the QT Landowners' record legal titles.

Is that really so much to expect?

Respectfully submitted,

August 23, 2025

/s/ Eric C. Grimm
Eric C. Grimm (Tx. Bar No. 00787596).
(SDTX Fed. Bar No. 33793)
ERIC C. GRIMM, PLLC
Counsel for Federal Home Loan Mortgage Corp., HOF REO 1, Inc., American Financial Network, Inc., and MVP1 REO, LLC
2727 Albany Street, Ste 928
Houston, TX 77006
(734) 717-4900
Fax: 888.502.1291
Email: ecgrimm@umich.edu

## CERTIFICATE OF SERVICE

I certify that on August 23, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which automatically sends notification of such filing to all attorneys of record.

Respectfully submitted,

August 23, 2025

/s/ Eric C. Grimm
Eric C. Grimm (Tx. Bar No. 00787596).
(SDTX Fed. Bar No. 33793)
ERIC C. GRIMM, PLLC
2727 Albany Street, Ste 928
Houston, TX 77006
(734) 717-4900
Fax: 888.502.1291
Email: ecgrimm@umich.edu