United States Courts
Southern District of Texas
FILED

SEP 16 2025

Nathan Ochsner, Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE:<br>MOSAIC SUSTAINABLE<br>FINANCE CORPORATION et al.,<br><br>Debtor. | §§§§§§ | Case No. 4:25-bk-90156<br>Chapter 11 |
| CLAUDETTE GOUVEIA,<br><br>Plaintiff,<br><br>VS.<br><br>MOSAIC SUSTAINABLE<br>FINANCE CORPORATION;<br>SOLAR MOSAIC, LLC,<br><br>Defendants. | §§§§§§§§§§§§§§ | Adversary Case No.:<br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT TO DETERMINE DISCHARGABILITY OF DEBT

Plaintiff CLAUDETTE GOUVEIA, by and through her attorneys THE LAW OFFICE OF JASON TENENBAUM, P.C., files this Complaint against Mosaic Sustainable Finance Corporation to determine that a debt owed to Plaintiff is non-dischargeable under 11 U.S.C. § 523(a)(2), and for good cause would show the court the following:

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a)-(b), and 1334(b).

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) as it concerns the dischargeability of a particular debt.

3. This Court may enter a final order consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; this adversary proceeding arises in and relates to the Chapter 11 bankruptcy case of Mosaic Sustainable Finance Corporation, Case 25-90156.

5. This Complaint is commenced pursuant to sections 523(a)(2) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

6. Pursuant to Federal Rule of Bankruptcy Procedure 7008 and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas, Plaintiff consents to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**PARTIES**

7. Plaintiff, CLAUDETTE GOUVEIA, is an individual consumer residing at 216-10 136th Avenue, Springfield Gardens, NY 11413.

8. Upon information and belief, Defendant MOSAIC SUSTAINABLE FINANCE CORPORATION is a Delaware Corporation, with Employer Identification Number 87-2456802 (Case 25-90156, Document 1, at p. 5).

9. Upon information and belief, and as listed on Defendant MOSAIC SUSTAINABLE FINANCE CORPORATION's Voluntary Bankruptcy Petition, Mosaic Sustainable Finance Corporation has an address at 601 12th Street, Suite 325, Oakland, CA 94607 (Case 25-90156, Document 1, at p. 1).

10. Upon information and belief, Defendant SOLAR MOSAIC, LLC is a Delaware Limited Liability Company, with Employer Identification Number 61-1653655 (Case 25-90156, Document 1, at p. 5).

11. Upon information and belief, and as listed on Debtors' Voluntary Petition, Defendant SOLAR MOSAIC, LLC conducts its principal place of business at 601 12th Street, Suite 325, Oakland, CA 94607 (Case 25-90155, Document 1, at p. 1).

12. Upon information and belief, Defendant MOSAIC SUSTAINABLE FINANCE CORPORATION holds 100% of equity in Defendant SOLAR MOSAIC, LLC (Case 25-90155, Document 1, at p. 7).

13. Both parties are named as debtors in Chapter 11 proceedings, jointly administered under Case 25-90156.

14. As debtors, both parties are represented by PAUL HASTINGS LLP, located at 609 Main Street, Suite 2500, Houston, TX 77002.

## FACTUAL BACKGROUND

### A. The Solar and Loan Agreements

15. On or about November 8, 2024, Ms. Gouveia was induced to enter into a Home Improvement Agreement (the "ATTYX Agreement") with ATTYX LLC ("ATTYX"), a domestic Limited Liability Company registered with the State of New York. (A copy of the ATTYX agreement is annexed hereto as **Exhibit A**.)

16. The ATTYX Agreement comprised the purchase and installation of an 8.82 kW solar panel system at her residence.

17. Further, The ATTYX agreement itself memorialized a far more extensive project than just solar panels; as part of the installation, ATTYX installed a "split unit" heating and air

conditioning system and disconnected Plaintiff's existing gas heating system, making the split unit system her primary and sole source of heat during the winter

18. The total cost of the system under the ATTYX Agreement was $122,000.00.

19. The ATTYX Agreement specified that of the total cost, $114,000.00 was to be covered by financing, with Ms. Gouveia providing an $8,000.00 down payment. **Exhibit A**, at p. 6.

20. The ATTYX Agreement was predicated on a series of false and misleading representations made by ATTYX, including that the solar panels would be sufficient to power her entire two-family home.

21. Only after the contract was executed did ATTYX reveal that the system was designed to power only the main floor and basement.

22. Further, ATTYX's representatives fraudulently misrepresented the financial terms, promising a low monthly pay of approximately $279.

23. Plaintiff was shocked to discover her actual payments amounted to nearly three times that amount, at approximately $777.79 per month.

24. ATTYX, as part of its predatory business model, steered Ms. Gouveia to Defendants MOSAIC SUSTAINABLE FINANCING CORPORATION and SOLAR MOSAIC, LLC ("Defendants") to obtain the necessary loan.

25. On the same day, November 8, 2024, Ms. Gouveia executed a Loan Agreement (the "Loan Agreement") with Defendants, for a principal amount of $114,000.00.[1] (A copy of the loan agreement is annexed hereto as **Exhibit B**.)

---

[1] Plaintiff is a creditor of the Debtor within the meaning of 11 U.S.C. § 101(10)(A), as Plaintiff holds a right to payment arising from a promissory note executed by the Debtor. The Debtor incurred this obligation prior to the petition date, and Plaintiff's claim constitutes a "debt" as defined by 11 U.S.C. § 101(12). Accordingly, Plaintiff is a party in interest with standing to bring this adversary proceeding under 11 U.S.C. § 523(a)(2) to seek a

26. The Loan Agreement explicitly states that its purpose is to "finance the purchase and installation of Solar Equipment" at Ms. Gouveia's residence. **Exhibit B,** at p. 4.

27. The Loan Agreement further provides that Mosaic will disburse the loan proceeds "on Your behalf to Your Installation Contractor…upon achievement of certain conditions described on the Loan Disbursement Schedule on the Summary Page." **Exhibit B,** at p. 14.

28. The "Loan Summary" page lists an "Install Complete Disbursement" of $114,000, indicating a disbursement upon complete installation. **Exhibit B,** at p. 8.

29. The ATTYX Agreement, the basis of the transaction Defendants agreed to finance, defines "substantial project completion" as when "all major solar components [are] installed," specifically identifying "Racking, Solar PV Modules & Inverter(s)." **Exhibit A,** at p. 6.

30. The ATTYX Agreement specifies a requirement of "payment in full" upon "substantial completion of the installation." *Id.*

31. Through these contractual provisions and the general nature of construction financing, Defendants made clear and material representations to Ms. Gouveia that it would disburse them to ATTYX only as work was properly completed.

32. Ms. Gouveia justifiably relied on these representations, believing that Mosaic would not fully fund the loan until she had a complete and operational solar system as contracted for.

**B.     Mosaic's Fraudulent Disbursement and the Incomplete Project**

33. On January 14, 2025, two months after the agreements were signed and long before the project was or could have been substantially complete, Mosaic's internal records show it

---

determination that the debt is nondischargeable because it was obtained by false pretenses, a false representation, or actual fraud.

processed an "Advance to increase balance" of the full $114,000.00. (A copy of the Mosaic's payment records is annexed hereto as **Exhibit C**.)

34. Contrary to its representations and the explicit terms of the underlying transaction, Mosaic took grossly improper and fraudulent action.

35. Upon information and belief, Mosaic disbursed the entire loan amount to ATTYX, or otherwise deemed the loan fully funded, without conducting any due diligence, without seeking confirmation from Ms. Gouveia, and without any factual basis to believe that "substantial project completion" had been achieved. *See* **Exhibit C**.

36. The work performed by ATTYX and its subcontractors following this premature disbursement was substandard, incomplete, and ultimately abandoned.

37. Contractors damaged Ms. Gouveia's property, including cutting a large hole in her ceiling.

38. The installation work ultimately failed to pass an inspection.

39. As of the date of this filing, the solar panel system is not fully installed, is not operational, and provides absolutely no power to Ms. Gouveia's home.

40. The primary benefit of the bargain—a functional solar system that would substantially reduce or eliminate her electric utility bills—has not been delivered.

### C. The Fraudulent Inducement of Payments and Subsequent Harm

41. Having knowingly and improperly disbursed the full loan amount, Mosaic then began demanding monthly payments from Ms. Gouveia.

42. The first payment of $777.79—an amount far exceeding the promise made by ATTYX towards Ms. Gouveia—was demanded for April 14, 2025. **Exhibit C,** at p. 3.

43. Under threat of default and damage to her credit, Ms. Gouveia has since made payments for April, May, June, and July of 2025. *Id.*

44. Mosaic's own payment history reveals the fraudulent nature of the arrangement. *Id.*

45. Despite Ms. Gouveia making payments totaling $3,111.16, Mosaic's records show that her principal balance remains at the full $114,000.00. *Id.*

46. The entirety of her payments has been applied to interest that began accruing from the date of the fraudulent disbursement.

47. Ms. Gouveia has been doubly harmed. She is paying interest on a $114,000.00 loan for a non-functional asset, and she continues to remain responsible for utility bills to Con Edison as a result of the dormant, useless fixture installed on her home.

48. When Ms. Gouveia contacted ATTYX to inquire about the project status and payments, an ATTYX representative named Toney repeatedly refused to confirm whether ATTYX received full payment from Mosaic and that she needed to obtain payment information from her lender.

49. Toney additionally informed Ms. Gouveia that ATTYX sought "additional funders" for her project, an admission of abandonment and underfunding, before ceasing communication.[2]

50. ATTYX has continued to refuse to provide any payment confirmation, consistently directing all inquiries back to Mosaic.

51. On June 6, 2025, Defendants filed for relief under Chapter 11 of the Bankruptcy Code. *See generally* Case No. 25-90156.

---

[2] In this conversation, Ms. Gouveia made it clear that she did not want to pay any additional loans related to seeking additional funders for the solar panel project.

52. They continue to seek enforcement of the fraudulent $114,000.00 debt against Ms. Gouveia while potentially discharging any and all of their own liabilities related to this transaction.

## COUNT I
### OBJECTION TO DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)
(False Pretenses, False Representation, or Actual Fraud)

53. Plaintiff repeats and reiterates each and every allegation as if originally set forth herein in paragraph "1" through "35."

54. Section 523(a)(2) of the Bankruptcy Code provides that a discharge under Chapter 11 does not discharge an individual debtor from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

55. To prevail on a claim under § 523(a)(2), a creditor must prove: (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result of its reliance. *See, e.g.*, Gen. Elec. Capital Corp. v. Acosta (In re Acosta), 406 F.3d 367, 372 (5th Cir. 2005).

56. **Defendants made false representations to Ms. Gouveia**; by entering into a loan agreement specifically for the construction of solar panels and referencing disbursements to the contractor, Defendants represented that they would disburse funds in a commercially reasonable manner, tied to the progress and completion of the solar installation.

57. The act of deeming the loan fully funded on January 14, 2025, and subsequently demanding payments from Ms. Gouveia, constituted an ongoing false representation that the

contractual conditions for full funding had been met and that she had received the benefit of her bargain—a completed, inspected, and functional solar system.

58. **Defendants knew these representations were false**; Defendants knew, or acted with reckless disregard for the truth, that the solar project was not substantially complete, or would not be substantially completed, on January 14, 2025, when they disbursed the full $114,000.00.

59. A complete, code-compliant solar installation requiring disconnection of a gas line and integration of two separate systems cannot be performed in such a short timeframe, and Defendants had no verification of completion.

60. Defendants' business model, which involves financing countless such projects, provides them with intimate knowledge of typical construction timelines and milestones.

61. Disbursing the entire loan amount at the outset of the project was a knowing departure from the represented terms of the transaction.

62. **Defendants acted with the intent to deceive Ms. Gouveia,** inferred from the totality of the circumstances.

63. By prematurely releasing the entire loan amount to a contractor known for predatory sales tactics, Defendants shifted all risk of contractor non-performance onto Ms. Gouveia.

64. This action immediately perfected Defendants' security interest, and began accruing interest on the full principal amount of the loan, regardless of project status.

65. This course of action maximized Defendants' financial return and security at the direct expense of the consumer, demonstrating a willful and reckless disregard for the truth of the transaction's status that is the hallmark of fraudulent intent.

66. **Ms. Gouveia justifiably relied on Defendants' representations;** As a consumer, Ms. Gouveia relied on the lender, referred by the contractor, to follow standard and fair procedures for construction financing.

67. She reasonably believed that the lender would protect its own interest—and by extension, hers—by not paying for work that had not been performed.

68. She had no reason to suspect that Defendants would release $114,000.00 before the project was complete, thereby leaving her with no leverage over the contractor and fully liable for a loan from which she received no functional benefit.

69. **As a direct and proximate result of Defendants' fraud, Ms. Gouveia has suffered significant damages;** She is obligated on a debt of $114,000.00, plus accruing interest and fees, for an incomplete, damaged and non-operational solar system.

70. Plaintiff has been wrongfully induced to make payments on this fraudulent debt, has been deprived of the energy savings that were the entire purpose of the transaction, and continues to pay her utility bills on top of the loan payments for the non-functional system.

71. The debt owed by Ms. Gouveia to Defendants was obtained by false pretenses, false representations, and actual fraud. Accordingly, the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment in her favor and against Defendants Solar Mosaic, LLC and Mosaic Sustainable Finance Corporation, providing the following relief:

**A.** A declaration and judgment that the entire debt owed by Plaintiff to Defendants, in the principal amount of $114,000.00 plus any and all accrued interest, fees, and costs, is NON-DISCHARGEABLE pursuant to 11 U.S.C. § 523(a)(2);

**B.** An award to plaintiff for reasonable attorney's fees incurred in connection with this Adversary Proceeding;

**C.** Such other and further relief as the Court deems just and proper.

Dated: Huntington Station, NY
       September 12, 2025

                              Respectfully submitted,
                              **/s/ Jason Tenenbaum**
                              Jason Tenenbaum, Esq.
                              NY Registration No. 4096285
                              The Law Office of Jason Tenenbaum, P.C.
                              *Attorneys for Plaintiff*
                              326 Walt Whitman Road, Suite C
                              Huntington Station, NY 11726
                              Telephone:    (516) 750-0595
                              Facsimile:    (516) 414-2869
                              E-mail:        jason@jtnylaw.com

# THE LAW OFFICE OF JASON TENENBAUM P.C.

ATTORNEY AT LAW

326 Walt Whitman Road, Suite C  
Huntington Station, NY 11746

Telephone: (516) 750-0595  
Facsimile: (516) 414-2869

September 12, 2025

**SENT VIA OVERNIGHT MAIL**
Nathan Ochsner  
Clerk of the United States Bankruptcy Court  
Southern District of Texas, Houston Division  
P. O. Box 61010  
Houston, TX 77208

United States Courts  
Southern District of Texas  
FILED  

SEP 16 2025  

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| In re: | Mosaic Sustainable Financing Corporation, et al. |
| Case: | 4:25-bk-90156 (Bankr. S.D. Tex.)1 |
| Case No.: | 25-90156 |
| Re: | Out of State Counsel filing Adversary Complaint and Motion to Appear Pro Hac Vice |

To whom it may concern:

Please find attached the following:

1. An adversary cover sheet;
2. An adversary complaint;
3. A motion to appear pro hac vice; and
4. Correspondence with case manager Rosario Saldana regarding filing an adversarial complaint and appearing pro hac vice.

Should you have any concerns, please do not hesitate to contact us.

Sincerely,  
**/s/ Pierre Piazza**  
Pierre Piazza  
The Law Office of Jason Tenenbaum, P.C.  
Telephone: (516) 750-0595 ext. 214  
E-mail: pierre@jtnylaw.com


