**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>MOSAIC SUSTAINABLE FINANCE CORPORATION, *et al.*,[1]<br><br>Wind-Down Debtors. | CHAPTER 11<br><br>Case No. 25-90156 (CML)<br><br>Judge Christopher M. Lopez |

**SOLAR SERVICING LLC'S OMNIBUS MOTION TO ENFORCE**
**THE PLAN INJUNCTION AND CONFIRMATION ORDER**
**(Relates to Docket Nos. 623, 671)**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney.**

Solar Servicing LLC ("Solar Servicing"), by and through its undersigned counsel, hereby moves this Court (this "Motion") for entry of an order enforcing the discharge, release, and injunction provisions of the *Fourth Amended Joint Chapter 11 Plan of Mosaic Sustainable Finance Corporation and Certain of Its Affiliated Debtors* [ECF No. 623] (the "Plan")[2] and the *Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of*

[1] A complete list of each of the Wind-Down Debtors in these Chapter 11 Cases, along with the last four digits of each federal tax identification number, is as follows: Solar Mosaic LLC (3655); Modern Home LLC (4998); Mosaic Funding Holdings LLC (0866); and SMCTX LLC (6303). The service address for each is as follows: Olive Advisors LLC, Plan Administrator of the Wind-Down Debtors c/o Bradley Arant Boult Cummings LLP, Jarrod Martin & Michael Riordan, 600 Travis St., 56th Floor, Houston, Texas 77002.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

*Mosaic Sustainable Finance Corporation and Certain of Its Affiliated Debtors* [ECF No. 671] (the "Confirmation Order") against Cynthia Bigelow ("Bigelow") and Barn Henderson ("Henderson"). In support thereof, Solar Servicing states as follows:

## PRELIMINARY STATEMENT

1. The confirmed Plan, Confirmation Order, and applicable law are clear: claims against the Reorganized Debtor and its property (including Solar Servicing, its indirect subsidiary) and Released Parties arising from pre-Effective Date conduct are discharged, released, and permanently enjoined. Ms. Bigelow and Mr. Henderson have violated these provisions by filing and continuing to prosecute arbitration demands before the American Arbitration Association against Solar Servicing (the "Arbitrations," as defined below). Solar Servicing is a Released Party under the Plan. Despite receiving written notice that their claims are barred—including detailed demand letters from Blank Rome LLP ("Blank Rome"), bankruptcy counsel to Solar Servicing—Ms. Bigelow and Mr. Henderson have refused to withdraw their claims. Solar Servicing now seeks enforcement of the Plan's discharge, release, and injunction provisions.

## RELIEF REQUESTED

2. By this Motion, Solar Servicing respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**:

(a) Finding that Ms. Bigelow's and Mr. Henderson's claims against Solar Servicing in the Arbitrations are barred by the Plan's discharge, release, and injunction provisions, and that the continued prosecution of such claims violates the Plan, Confirmation Order, and applicable provisions of the Bankruptcy Code;

(b) Enforcing the Plan injunction and ordering Ms. Bigelow and Mr. Henderson to immediately withdraw with prejudice all claims against Solar Servicing in the Arbitrations;

(c) Permanently enjoining Ms. Bigelow and Mr. Henderson from commencing or continuing any action or proceeding against Solar Servicing, or any other Released Party to collect, recover, or offset any claim based on pre-Effective Date conduct;

(d) Awarding Solar Servicing its reasonable attorneys' fees and costs incurred in connection with enforcing the Plan's discharge, release, and injunction provisions, including preparation of this Motion and related enforcement efforts; and

(e) Granting such other and further relief as the Court deems just and proper.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. "Bankruptcy Court[s] plainly [have] jurisdiction to interpret and enforce [their] own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *see also Grossman v. Belridge Grp.* (*In re Lothian Oil, Inc.*), 531 F. App'x 428, 436 n.9 (5th Cir. 2013); *Cole v. Nabors Corporate Services, Inc.* (*In re CJ Holding Co.*), 597 B.R. 597, 610-611 (S.D. Tex. 2019). The Confirmation Order provides that this Court retains exclusive jurisdiction over "all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code," including the authority "to issue and enforce injunctions" and "to hear and determine all disputes involving the existence, nature or scope of the discharge, releases and injunction provisions contained in the Plan." Confirmation Order ¶ 84; Plan, Art. XIII.

4. This Motion is a core proceeding under 28 U.S.C. § 157(b). Confirmation of a chapter 11 plan is a core proceeding under § 157(b)(2)(L). *See In re Serta Simmons Bedding, L.L.C.*, 125 F.4th 555, 577 (5th Cir. 2024) ("Core proceedings include the confirmation of plans."). The Motion, which asks the Court to enforce the Confirmation Order and the Plan it confirmed, is also a core proceeding. *See In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1064 (5th Cir. 1997) (holding proceedings to enforce discharge injunction issued in confirmation order were core).

## BACKGROUND

### A. The Debtors and the Bankruptcy Proceeding

5. Mosaic Sustainable Finance Corporation, along with its affiliates Solar Mosaic LLC, Modern Home LLC, Mosaic Funding Holdings LLC, and SMCTX LLC (collectively, the "Debtors"), commenced these Chapter 11 Cases on June 6, 2025 (the "Petition Date"), by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.

6. Solar Mosaic LLC operated a consumer lending platform that originated loans for residential solar panel installations and home improvement projects.

7. Following an extensive solicitation and voting process, on September 5, 2025, this Court entered the Confirmation Order, confirming the Plan. The Plan became effective on September 22, 2025 (the "Effective Date"). *See Notice of Effective Date* [ECF No. 769].

8. As part of the Restructuring Transactions contemplated by the Plan, Mosaic Sustainable Finance Corporation emerged from bankruptcy as the Reorganized Debtor, now known as FROFC LLC, and Forbright Bank converted certain of its debt into equity of the Reorganized Debtor. As contemplated by the Plan, Solar Servicing LLC was created as a newly formed, indirectly owned subsidiary of the Reorganized Debtor. As reflected in the Restructuring Transactions Memorandum attached to the Plan Supplement [ECF No. 567] (the "Restructuring Transactions Memorandum"), the Plan defines Solar Servicing as the "New Servicing Opco," which was ultimately tasked with servicing certain loans on behalf of the holders of those loans under new post-Effective Date servicing agreements with those holders.

9. The Restructuring Transactions Memorandum describes the distinct corporate identities and formation of the relevant entities. Pursuant to Step 1 of the Restructuring Transactions, "Forbright Bank ('Plan Sponsor') shall form and own 100% of the issued and

outstanding equity interests in Solar Servicing Holdings LLC (‘New HoldCo’); New HoldCo [shall] own 100% of the equity interests in newly formed (a) Solar Servicing LLC (‘New Servicing OpCo’) and (b) FB Solar Admin LLC (‘New Admin OpCo’).” *Restructuring Transactions Memorandum*, Step 1. Solar Servicing is a newly formed entity that did not assume any obligations of Solar Mosaic LLC. Solar Servicing services certain loans pursuant to servicing agreements with loan holders taking effect after the Effective Date (the “New Servicing Agreements”)—not pursuant to Solar Mosaic’s pre-petition servicing agreements. *See Restructuring Transactions Memorandum* at Steps 2–4, 9.

10. The Plan contains comprehensive discharge, release, and injunction provisions in Article XII. Section 12.5 of the Plan discharges all pre-Effective Date claims against the Reorganized Debtor and its assets and properties. Section 12.3 provides a Third-Party Release under which the Released Parties, including the Reorganized Debtor and its affiliates and subsidiaries (including Solar Servicing), are released from all claims arising from conduct occurring prior to the Effective Date. Section 12.6 permanently enjoins all persons holding discharged and released claims from commencing or continuing any action on account of such claims.

11. The Confirmation Order expressly approved these provisions, finding that the Plan injunction is “necessary to implement, preserve, and enforce the Reorganized Debtor’s discharge, the Debtor Release, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve this purpose.” *Confirmation Order* ¶ 35. The Confirmation Order further provides that “all injunctions, releases, and exculpation provisions contained in the Plan . . . are hereby approved and shall be effective and binding on all Persons . . . without further order or action by this Bankruptcy Court.” *Confirmation Order* ¶ 45.

12. Although the Plan preserves certain Consumer Credit Transaction Claims against specific enumerated parties, that carve-out is narrow in scope: it applies only to claims against "Solar Mosaic LLC and any Financing Partners (solely in their capacity as Financing Partners) or ABS Released Parties." Plan §§ 12.3, 12.5, 12.6. The Plan defines "Financing Partners" as "the various financial institutions through which completed loans originated through the Debtors were funded and/or to which such loans were sold." Plan § 1.84. Critically, Solar Servicing does not own any loans originated through the Solar Mosaic platform—Solar Servicing is a loan servicer, not a loan owner. Accordingly, Solar Servicing does not qualify as a "Financing Partner" under the Plan and does not fall within this carve-out.

**B. Ms. Bigelow's and Mr. Henderson's Arbitrations**

13. Ms. Bigelow and Mr. Henderson are each consumer borrowers who obtained loans for residential solar panel installations financed through the Debtors' lending platform.

14. In or about May and June 2026, approximately nine months after the Plan's Effective Date of September 22, 2025, Ms. Bigelow and Mr. Henderson each filed their respective arbitration demands before the American Arbitration Association (the "Bigelow Arbitration" and the "Henderson Arbitration," respectively, and collectively, the "Arbitrations"), copies of which are attached hereto as **Exhibits B** and **C**. Ms. Bigelow's and Mr. Henderson's claims arise from sales contracts with Freedom Forever North Carolina, LLC ("Freedom Forever NC") and Freedom Forever Virginia, LLC ("Freedom Forever VA," and together with Freedom Forever NC, the "Freedom Forever Entities"), respectively, for the purchase and installation of solar panel systems and related consumer loans originated by Solar Mosaic prior to the Bankruptcy Cases. Both Arbitrations erroneously allege that Solar Servicing is the successor to Solar Mosaic and assert various causes of action relating to alleged misrepresentations in the solar financing contracts and

deficiencies in the solar panel installations. Each claim arises from pre-Effective Date conduct and is therefore barred by the Plan's discharge, release, and injunction provisions.

15. Ms. Bigelow and Mr. Henderson each assert claims against Solar Servicing based on a derivative liability theory under the FTC Holder Rule (16 C.F.R. § 433.2), alleging that Solar Servicing, as purported assignee and loan servicer, is subject to all claims and defenses that they could assert against the original "seller" arising from the "seller's" alleged failure to provide functioning solar systems. *See* Bigelow Arbitration ¶¶ 24–27; Henderson Arbitration ¶¶ 24–25. Both Arbitrations erroneously attribute successor liability to Solar Servicing, alleging that Solar Servicing is the current successor to Solar Mosaic and is therefore liable for claims arising from the conduct of the Freedom Forever Entities and Solar Mosaic. *See* Bigelow Arbitration ¶ 2; Henderson Arbitration ¶ 10. The Arbitrations also assert various causes of action relating to alleged misrepresentations in the solar financing contracts and deficiencies in the solar panel installations. *See* Bigelow Arbitration ¶¶ 28–48; Henderson Arbitration ¶¶ 25–81. Each claim arises from pre-Effective Date conduct and is therefore barred by the Plan's discharge, release, and injunction provisions.

**C. <u>Ms. Bigelow's and Mr. Henderson's Claims Were Discharged</u>**

16. Section 12.5 of the Plan, entitled "Discharge of Claims and Termination of Interests," discharged all pre-Effective Date claims against the Reorganized Debtor, its successors and assigns, and their assets and properties as of the Effective Date of September 22, 2025. Specifically, Section 12.5 provides that "all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date." *Plan* § 12.5(d). As the Reorganized Debtor's indirect subsidiary, Solar Servicing

constitutes "property" of the Reorganized Debtor for purposes of this discharge. The Plan, as confirmed by this Court, therefore discharged Ms. Bigelow's and Mr. Henderson's claims against Solar Servicing, all of which arise from pre-Effective Date conduct, and Ms. Bigelow and Mr. Henderson are barred from asserting such claims against the Reorganized Debtor's property, including Solar Servicing.

**D. <u>Ms. Bigelow and Mr. Henderson Are Releasing Parties Under the Plan</u>**

17. As borrowers with pre-Effective Date Consumer Credit Transaction Claims arising from Solar Mosaic-originated loans, Ms. Bigelow and Mr. Henderson each received the notices required under the Plan's solicitation procedures. This Court found that the Debtors and their solicitation agent, Kroll Restructuring Administration LLC, provided each consumer borrower with a Notice of Potential Voting Status that included (i) the full text of the Article XII release provisions, (ii) a Release Opt-Out Form, and (iii) an express written advisement that failure to timely opt out would constitute consent to the Third-Party Release. Confirmation Order ¶ 12.

18. This Court found that the opt-out mechanism was valid and that adequate notice was provided to all parties in interest. Confirmation Order ¶ 33.

19. Neither Ms. Bigelow nor Mr. Henderson appear on the list of timely filed Release Opt-Out Forms received by Kroll Restructuring Administration LLC. Under the Plan's definition of "Releasing Parties" (Plan § 1.155) and this Court's findings, Ms. Bigelow and Mr. Henderson are therefore bound by the Third-Party Release and are among the parties enjoined from asserting claims against the Reorganized Debtor and Solar Servicing for conduct that arose prior to the Effective Date.

**E. <u>Pre-Motion Correspondence</u>**

20. On July 7, 2026 and July 10, 2026, Blank Rome, on behalf of Solar Servicing, sent detailed demand letters to Mr. Henderson and Ms. Bigelow, respectively, each of whom is

proceeding *pro se* (the "July 7 Letter" and the "July 10 Letter," respectively, and collectively, the "Demand Letters"), copies of which are attached hereto as **Exhibits D** and **E**. The Demand Letters explained that the claims asserted against Solar Servicing in the Arbitrations are barred by the Plan's discharge, release, and injunction provisions and demanded voluntary withdrawal with prejudice within seven days.

21. The Demand Letters specifically advised Ms. Bigelow and Mr. Henderson that:

(a) Solar Servicing is a "Released Party" under the Plan;

(b) Any claims arising from pre-Effective Date conduct—such as the claims asserted by Ms. Bigelow and Mr. Henderson—were discharged and released upon the Plan's Effective Date;

(c) The Plan's injunction provisions permanently enjoin holders of discharged claims from commencing or continuing any action on account of such claims;

(d) The Consumer Credit Transaction Claims carve-out does not apply to Solar Servicing; and

(e) Continued prosecution of the Arbitrations may result in sanctions, including attorneys' fees and costs.

22. Despite receiving detailed written notice from Blank Rome that their claims against Solar Servicing are barred, that Solar Servicing does not own or hold their loans, and that the Consumer Credit Transaction Claims carve-out does not apply, neither Ms. Bigelow nor Mr. Henderson has withdrawn the Arbitrations against Solar Servicing.

23. The Demand Letters provided Ms. Bigelow and Mr. Henderson with descriptions of the relevant portions of the Plan, the Confirmation Order, and the discharge and injunction

provisions, yet they have chosen to continue prosecuting the Arbitrations. Accordingly, Solar Servicing must now seek enforcement of the Plan's discharge, release, and injunction provisions.

## ARGUMENT

24. This Court has broad authority to enforce the Plan's discharge, release, and injunction provisions. Section 105(a) of the Bankruptcy Code authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This includes the power to enforce confirmation orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *Luan Inv. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002). Numerous courts have issued orders enforcing similar discharge and injunction provisions against holders of claims who refused to dismiss actions that violated the applicable plan and confirmation order. *See, e.g.*, *In re Lothian Oil, Inc.*, 531 F. App'x 428, 436 n.9 (5th Cir. 2013); *In re CJ Holding Co.*, 597 B.R. 597, 610 (S.D. Tex. 2019).

25. Once a plan is confirmed, parties are barred from pursuing claims that arose prior to confirmation. *See In re Highland Capital Mgmt., L.P.*, 132 F.4th 353, 360–62 (5th Cir. 2025); *In re Pacific Lumber Co.*, 584 F.3d 229, 240–41 (5th Cir. 2009). A confirmation order constitutes a final judgment. *In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162, 166 (3d Cir. 2018). So long as a party was given a chance to challenge the Plan, they cannot challenge it now by resisting enforcement of the Confirmation Order. *See Travelers Indem. Co.*, 557 U.S. at 153; *see also In re Arctic Glacier*, 901 F.3d at 168–69.

### A. Ms. Bigelow's and Mr. Henderson's Claims Are Barred by the Plan's Discharge and Injunction Provisions

26. The discharge and injunction provisions of the Bankruptcy Code and the confirmed Plan are clear and unambiguous. Section 1141(d)(1) of the Bankruptcy Code provides that

confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1). Section 524(a) of the Bankruptcy Code operates as a permanent injunction against the commencement or continuation of any action to collect a discharged debt. 11 U.S.C. § 524(a)(2).

27. The Plan and Confirmation Order expressly discharge all prepetition claims and enjoin all parties from seeking to collect such claims. *See Confirmation Order* ¶¶ 33, 35, 45; *Plan*, Art. XII (§§ 12.3, 12.5, 12.6). Ms. Bigelow's and Mr. Henderson's continued efforts to pursue their claims against Solar Servicing are a direct violation of the Plan, the Confirmation Order, and the Bankruptcy Code.

28. Ms. Bigelow's and Mr. Henderson's continued prosecution of the Arbitrations constitutes an impermissible collateral attack on this Court's release findings, which acquired *res judicata* effect as to all parties in interest once the time to appeal expired. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (confirmation order's release provisions, when sufficiently clear, are entitled to *res judicata* effect against later collateral attack); *In re Linn Energy, L.L.C.*, 927 F.3d 862, 866–67 (5th Cir. 2019) (same). The Plan is binding upon all creditors and all other parties in interest pursuant to section 1141(a) of the Bankruptcy Code. The Confirmation Order is a Final Order. *Confirmation Order* ¶ 83. Accordingly, 11 U.S.C. § 1141(a) independently bars Ms. Bigelow's and Mr. Henderson's claims because a confirmed plan binds every creditor "whether or not such creditor . . . has accepted the plan."

29. Solar Servicing is a "Released Party" under the Plan's definitions as an Affiliate of the Reorganized Debtor. *See Plan* § 1.154. The Plan's provisions therefore bar and enjoin any claims against Solar Servicing arising from pre-Effective Date conduct.

30. Ms. Bigelow's and Mr. Henderson's claims are pre-Effective Date claims, and Solar Servicing is a Released Party under the Plan. The Plan and Confirmation Order therefore bar and enjoin any attempt to pursue such claims. *See Confirmation Order* ¶ 45.

**B. <u>Ms. Bigelow and Mr. Henderson Are Bound by the Third-Party Release</u>**

31. Ms. Bigelow and Mr. Henderson are bound by the Third-Party Release set forth in Section 12.3 of the Plan.

32. Section 12.3 of the Plan, entitled "Third-Party Release," releases the Released Parties, which includes the Reorganized Debtor and its affiliates and subsidiaries (including Solar Servicing):

> ***from any and all Claims, Interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever***, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors . . . .

*Plan* § 12.3 (emphasis added).

33. Ms. Bigelow and Mr. Henderson each received the notices required under the Plan's solicitation procedures, including the full text of the Article XII release provisions, a Release Opt-Out Form, and an express written advisement that failure to timely opt out would constitute consent to the Third-Party Release. Confirmation Order ¶¶ 12, 33 (finding that notices to borrowers "clearly and unambiguously stated that the Plan contained the Third-Party Release, provided the language of the Third-Party Release and included any relevant definitions, and provided instructions on how to opt-out"). Neither Ms. Bigelow nor Mr. Henderson appears on the list of

timely filed Release Opt-Out Forms. The Third-Party Release therefore binds them from pursuing their Arbitrations against Solar Servicing.

34. The Confirmation Order specifically found that the Third-Party Release "is a critical and integral component of the Plan, preventing significant and time-consuming litigation regarding the parties' respective rights and interests" and "provides finality for the Debtors, the Reorganized Debtor, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtor." *Confirmation Order* ¶ 33.

**C. <u>The Consumer Credit Transaction Claims Carve-Out Does Not Apply</u>**

35. As explained above, Solar Servicing is not Solar Mosaic LLC, a Financing Partner, or an ABS Released Party. Solar Servicing is a newly formed indirect subsidiary of the Reorganized Debtor pursuant to the Restructuring Transactions Memorandum as the "New Servicing Opco" and is not among the entities subject to the Consumer Credit Transaction Claims carve-out. As a servicing entity, Solar Servicing does not hold any loans—it services loans on behalf of the actual loan owners. Because Solar Servicing does not own any loans—originated by Solar Mosaic or otherwise—it is not a Financing Partner and therefore received the full benefit of the Plan's discharge and release provisions. The Plan permanently bars Ms. Bigelow's and Mr. Henderson's claims against Solar Servicing.

36. Accordingly, because Ms. Bigelow's and Mr. Henderson's claims are pre-Effective Date claims, and because Solar Servicing does not fall within the Consumer Credit Transaction Claims carve-out, any attempt to pursue such claims against Solar Servicing is barred and enjoined by the Plan and Confirmation Order. *See* Confirmation Order ¶ 45.

**D. <u>The FTC Holder Rule Does Not Confer Liability on Solar Servicing</u>**

37. Ms. Bigelow and Mr. Henderson each assert claims against Solar Servicing under the FTC Holder Rule, 16 C.F.R. § 433.2, alleging that Solar Servicing, as the purported assignee

and servicer of their loans, is subject to all claims and defenses they could assert against the original seller for the seller's alleged failure to provide functioning solar systems. *See* Bigelow Arbitration ¶¶ 24–27; Henderson Arbitration ¶¶ 24–25. These claims against Solar Servicing under the FTC Holder Rule are erroneous because Solar Servicing is not, and has never been, the holder of Ms. Bigelow's or Mr. Henderson's solar loans.

38. The FTC Holder Rule allows consumers to assert against the "holder" of a consumer credit contract any claims or defenses the consumer could raise against the original seller. However, the rule applies only to holders of consumer credit contracts—not to loan servicers, parent companies, or other parties who do not hold the credit contract. *See* 16 C.F.R. § 433.1 (defining "holder" as the person to whom the consumer credit contract is assigned). Solar Servicing merely services Ms. Bigelow's and Mr. Henderson's loans on behalf of the loan owners—it does not hold the loans. Because Solar Servicing is a servicer and not a holder, the FTC Holder Rule does not provide a basis for Ms. Bigelow's or Mr. Henderson's claims against Solar Servicing.

39. Solar Servicing has never originated, purchased, or held Ms. Bigelow's or Mr. Henderson's loans. Solar Servicing is a servicer, not a holder. The FTC Holder Rule imposes liability only on "holders" of consumer credit contracts, and Solar Servicing simply cannot be held liable as a holder when it is not one.

**E. <u>Sanctions and Recovery of Attorneys' Fees Are Warranted</u>**

40. This Court has authority to award attorneys' fees and costs incurred in enforcing the Plan's discharge, release, and injunction provisions, and to hold Ms. Bigelow and Mr. Henderson in civil contempt for their willful violations. Section 105(a) of the Bankruptcy Code provides that bankruptcy courts may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," including sanctions for violations of court

orders. 11 U.S.C. § 105(a). The Fifth Circuit has recognized that bankruptcy courts possess inherent contempt power to enforce their orders. *See In re Bradley*, 588 F.3d 254, 263–65 (5th Cir. 2009); *see also Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). Courts in this District and elsewhere have routinely awarded attorneys' fees to parties compelled to enforce plan injunctions against parties who knowingly violate such injunctions. *In re Skyport Glob. Commc'ns, Inc.,* 528 B.R. 297, 322–36 (S.D. Tex. 2015) (affirming multiple awards of attorneys' fees as sanctions against parties who filed state court action in violation of confirmed plan's injunctive provisions).

41. Ms. Bigelow and Mr. Henderson, each of whom is proceeding *pro se*, have knowingly and willfully continued to prosecute claims against Solar Servicing in direct violation of the Plan's discharge, release, and injunction provisions. The elements of civil contempt are well established: "(1) that a court order was *in effect*, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009) (quoting *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)). All three elements are satisfied here. First, the Confirmation Order and Plan Injunction were in effect. Second, they required Ms. Bigelow and Mr. Henderson to refrain from commencing or continuing any action against Released Parties on account of pre-Effective Date claims. Third, Ms. Bigelow and Mr. Henderson have failed to comply by filing and continuing to prosecute the Arbitrations despite receiving detailed written notice from Blank Rome that their claims are barred. Their continued prosecution has compelled Solar Servicing to incur substantial attorneys' fees and costs. It is critical that Solar Servicing receive the benefit of the Plan Injunction and not be forced to litigate claims that have been discharged and are permanently barred.

42. Solar Servicing should not be penalized by bearing the costs of enforcing the Plan's provisions against parties who have received clear notice that their claims are barred but refuse to comply. This Court has inherent authority to impose sanctions for willful violations of its orders, including an award of attorneys' fees and costs incurred in enforcing compliance. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (courts have inherent power to sanction bad faith conduct); *In re Gorshtein*, 285 B.R. 118, 124 (Bankr. S.D.N.Y. 2002) (granting sanctions pursuant to Bankruptcy Code section 105(a)). Accordingly, Solar Servicing respectfully requests that this Court award reasonable attorneys' fees and costs incurred in connection with this Motion and other efforts to enforce the Plan's discharge, release, and injunction provisions.

43. Continuing to defend against the Arbitrations will also cause Solar Servicing to allocate additional internal resources away from its business operations in a manner inconsistent with its expectations based upon the Plan and Confirmation Order. It is therefore critical that Ms. Bigelow and Mr. Henderson be compelled to promptly withdraw the claims that are being pursued in violation of the Plan and the Confirmation Order.

## CONCLUSION

44. For the foregoing reasons, Solar Servicing respectfully requests that this Court grant this Motion and enforce the discharge, release, and injunction provisions of the Plan and Confirmation Order. Ms. Bigelow's and Mr. Henderson's claims against Solar Servicing are pre-Effective Date claims that were discharged and released pursuant to the Plan, as confirmed by the Confirmation Order. The Consumer Credit Transaction Claims carve-out does not apply to claims against Solar Servicing.

**WHEREFORE**, Solar Servicing respectfully requests that this Court enter an order substantially in the form attached hereto as **Exhibit A**:

(a) Finding that Ms. Bigelow's and Mr. Henderson's claims against Solar Servicing in the Arbitrations are barred by the Plan's discharge, release, and injunction provisions, and that the continued prosecution of such claims violates the Plan, Confirmation Order, and applicable provisions of the Bankruptcy Code;

(b) Enforcing the Plan injunction and ordering Ms. Bigelow and Mr. Henderson to immediately withdraw with prejudice all claims against Solar Servicing in the Arbitrations;

(c) Permanently enjoining Ms. Bigelow and Mr. Henderson from commencing or continuing any action or proceeding against Solar Servicing or any other Released Party to collect, recover, or offset any claim based on pre-Effective Date conduct;

(d) Awarding Solar Servicing its reasonable attorneys' fees and costs incurred in connection with enforcing the Plan's discharge, release, and injunction provisions, including preparation of this Motion and related enforcement efforts; and

(e) Granting such other and further relief as the Court deems just and proper.

Dated: August 26, 2026

Respectfully submitted,

**BLANK ROME LLP**

By: */s/ Gregory F. Vizza*

Gregory F. Vizza (admitted *pro hac vice*)
130 North 18th Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-5702
Email: gregory.vizza@blankrome.com

Joseph M. Welch (Bar No. 24135531)
4 Park Plaza, Suite 450
Irvine, CA 92614
Tel: (949) 812-6000
Email: Joseph.Welch@blankrome.com

*Attorneys for Solar Servicing LLC*

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2026, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Bankruptcy Court for the Southern District of Texas using the CM/ECF system. The ECF system will send a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept service of this document by electronic means.

I further certify that on August 26, 2026, I caused a true and correct copy of the foregoing document to be served by first class mail, postage prepaid, upon Ms. Cynthia Bigelow and Mr. Barn Henderson, each of whom is proceeding *pro se*, at the following addresses:

Cynthia Bigelow
1924 Wortman Street
Connelly Springs, North Carolina 28612

Barn Henderson
144 Victoria Drive
Virginia Beach, Virginia 23452

*/s/ Gregory F. Vizza*
Gregory F. Vizza

**CERTIFICATE OF ACCURACY**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Gregory F. Vizza*
Gregory F. Vizza